HAHN LOESER & PARKS LLP
Michael J. Gleason (SBN 279434)
Lindsay J. Mertens (SBN 254008)
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA  92101
Telephone: 619.810.4300
Facsimile: 619.810.4301
mgleason@hahnlaw.com
lmertens@hahnlaw.com

Attorneys for Defendants BAM Trading Services Inc.
and Brian Shroder

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re BAM Trading Services Inc. Securities Litigation | **Case No. 3:22-cv-03461-JSC**<br><br>**DEFENDANTS' NOTICE OF MOTION AND  MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:  Hon. Jacqueline Scott Corley<br>Ctrm.:  8<br>Date:  February 2, 2023<br>Time:  10:00 a.m. |

Hahn Loeser & Parks LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA  92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hahn Loeser & Parks LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA  92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

## **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .........................................................2

I.      Introduction ................................................................................................................2

II.     Statement of Issue ......................................................................................................3

III.    Relevant Background ..................................................................................................3

        A.      Plaintiff's Allegations......................................................................................3

        B.      The Parties Agreement to Arbitrate ................................................................3

IV.     Law and Argument .....................................................................................................5

        A.      The Federal Arbitration Act Governs the Arbitration Clause ........................5

        B.      Threshold Issues of Arbitrability Have Been Delegated to the Arbitrator....5

                1.      The Parties Delegated Issues of Arbitrability to the Arbitrator .........6

                2.      Plaintiff Cannot Prove That the Delegation Clause Is Unconscionable ..........7

                        (a)     The Delegation Clause Is Not Procedurally Unconscionable...............8

                        (b)     The Delegation Clause Is Not Substantively Unconscionable.............10

                                (1)     Plaintiff's Arguments Do Not Address the
                                        Delegation Provision........................................10

                                (2)     Alternatively, Plaintiff Has Not Proven That the
                                        Delegation Provision Is Substantively
                                        Unconscionable........................................................12

        C.      Even if The Court, Rather Than an Arbitrator, Decides Issues of
                Arbitrability, Plaintiff Cannot Show a Basis for Disregarding the
                Arbitration Agreement ...................................................................................15

        D.      If Necessary, This Court Should Sever the Substantively Unconscionable
                Terms and Enforce the Delegation or Arbitration Clause..............................16

        E.      Shroder Rightfully Invokes The Arbitration Clause ......................................17

                1.      Shroder May Enforce the Arbitration Clause Based On Agency.......17

                2.      Shroder May Enforce the Arbitration Clause Based on Equitable
                        Estoppel..........................................................................................18

        F.      This Matter Should Be Dismissed, or Alternatively Stayed, Pending
                Arbitration .....................................................................................................18

V.      CONCLUSION ..........................................................................................................19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hahn Loeser & Parks LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA  92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A & M Produce Co. v. FMC Corp.*,
    135 Cal. App. 3d 473 (1982) ...................................................................................................7

*Amisil Holdings Ltd v. Clarium Capital Mgmt.*,
    622 F. Supp. 2d 825 (N.D. Cal. 2007) ................................................................................17

*Armendariz v. Found. Health PsychCare Servs., Inc.*,
    24 Cal. 4th 83 (2000) ......................................................................................................7, 16

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ..............................................................................................................5

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) ..............................................................................................................6

*Baltazar v. Forever 21, Inc.*,
    62 Cal. 4th 1237 (2016) ........................................................................................................7

*Barati v. Ottno, Inc.*,
    No. G054960, 2018 WL 3099015 (Cal. 4th Dist., Div. 3 June 25, 2018) ..........................12

*Belton v. Comcast Cable Holdings LLC*,
    151 Cal. App. 4th 1224 (2007) .............................................................................................9

*Bielski v. Coinbase, Inc.*,
    No. C21-07478 WHA, 2022 WL 1062049 (N.D. Cal. April 8, 2022) ................................14

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) ...........................................................................................6, 8

*Britton v. Co-op Banking Grp.*,
    4 F.3d 742 (9th Cir. 1993) ..................................................................................................17

*Campos v. JP Morgan Chase Bank, NA*,
    No. 18-cv-06169-JSC, 2019 WL827634 (N.D. Cal. Feb. 21, 2019) ..................................19

*Castaldi v. Signature Retail Services, Inc.*,
    No. 15-cv-00737-JSC, 2016 WL 74640 (N.D. Cal. Jan. 7, 2016) .....................................17

*Castaldi v. Signature Retail Servs., Inc.*,
    No. 15-cv-00737-JSC, 2016 WL 7042991 (N.D. Cal. Jan. 20, 2016) ...............................19

*Chand v. Checksmart Fin. LLC*,
    No. 17-CV-03895-JSC, 2017 WL 3605221 (N.D. Cal. Aug. 22, 2017) ..............................9

MOTION TO COMPEL ARBITRATION

*Chau v. EMC Corp.*,
　No. C-13-04806-RMW, 2014 WL 842579 (N.D. Cal. Feb. 28, 2014) ................................19

*Chen v. PayPal, Inc.*,
　61 Cal. App. 5th 559 (2021) ...............................................................................12, 13

*Chin v. Boehringer Ingelham Pharmaceuticals, Inc.*,
　No. 17-cv-03703-JSC, 2017 WL 3977381 (N.D. Cal. Sept. 11, 2017) ........................14

*Citizens Bank v. Alafabco, Inc.*,
　539 U.S. 52 (2003) ...........................................................................................................5

*Cooper v. Adobe Sys. Inc.*,
　No. 18-CV-06742-BLF, 2019 WL 5102609 (N.D. Cal. Oct. 11, 2019) ..........................6

*Crippen v. Central Valley RV Outlet, Inc.*,
　124 Cal. App. 4th 1159 (2004) .........................................................................................8

*Davis v. Nordstrom. Inc.*,
　755 F.3d 1089 (9th Cir. 2014) ..........................................................................................5

*Dean Witter Reynolds, Inc. v. Super Ct.*,
　211 Cal. App. 3d 758 (1989) ............................................................................................9

*DeMartini v. Johns*,
　No. 3:12-CV-03929-JCS, 2012 WL 4808448 (N.D. Cal. Oct. 9, 2012) ........................19

*Dotson v. Amgen, Inc.*,
　181 Cal. App. 4th 975 (2010) .........................................................................................16

*Droesch v. Wells Fargo Bank, N.A.*,
　No. 20-cv-06751-JSC, 2021 WL 1817057 (N.D. Cal. May 6, 2021) ..............................9

*Esguerra-Aguilar, Inc. v. Shapes Franchising, LLC*,
　No. 20-cv-00574-BLF, 2020 WL 3869186 (N.D. Cal. July 9, 2020).....................*passim*

*Gentry v. Super. Ct.*,
　42 Cal. 4th 443 (2007) ....................................................................................................16

*George v. eBay, Inc.*,
　71 Cal. App. 5th 620 (2021) ...........................................................................................12

*Graham v. Scissor-Tail, Inc.*,
　28 Cal. 3d 807 (Cal. 1981) ...............................................................................................8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
　139 S. Ct. 524 (2019) .......................................................................................................6

*Interdigital Tech. Corp. v. Pegatron Corp.*,
　No. 15-CV-02584-LHK, 2016 WL 234433 (N.D. Cal. Jan. 20, 2016) ...........................6

Hahn Loeser & Parks LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

MOTION TO COMPEL ARBITRATION

*Iskanian v. CLS Transportation Los Angeles, LLC,*
    59 Cal. 4th 348 (2014) ................................................................................................16

*Izzi v. Mesquite Country Club,*
    186 Cal. App. 3d 1309 (1986) ........................................................................................8

*Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C.,*
    No. 18-cv-00303-WHO, No. 18-cv-00304-WHO, 2019 WL 144585 (N.D. Cal. Jan.
    9, 2019).......................................................................................................................10

*Kramer v. Toyota Motor Corp.,*
    705 F.3d 1122 (9th Cir. 2013) ......................................................................................18

*Letizia v. Prudential Bache Securities, Inc.,*
    802 F.2d 1185 (9th Cir. 1986) ......................................................................................17

*Lewis v. UBS Fin. Servs. Inc.,*
    818 F. Supp. 2d 1161 (N.D. Cal. 2011) ........................................................................19

*Mitsubishi Motors Co. v. Soler Chrysler Plymouth,*
    473 U.S. 614 (1985) ....................................................................................................15

*Mohamed v. Uber Techs., Inc.,*
    848 F.3d 1201 (9th Cir. 2016) ..............................................................................7, 10, 11

*Momot v. Mastro,*
    652 F.3d 982 (9th Cir. 2011) ..........................................................................................6

*Morris v. Ernst & Young LLP,*
    No. C-12-04964, 2013 WL 3460052 (N.D. Cal. July 9, 2013) ........................................19

*Morris v. Redwood Empire Bancorp,*
    128 Cal. App. 4th 1305 (2005)......................................................................................8, 9

*Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC,*
    55 Cal. 4th 223 (2012)...............................................................................................8, 13

*Portland Gen. Elec. Co. v. U.S. Bank Trust Nat'l Ass'n,*
    218 F.3d 1085 (9th Cir. 2000) ........................................................................................5

*Poublon v. C.H. Robinson Co.,*
    846 F.3d 1251 (9th Cir. 2017) ......................................................................................17

*Rent-A-Ctr., W., Inc. v. Jackson,*
    561 U.S. 63 (2010) ..............................................................................................6, 7, 10

*Riley v. Medline Indus., Inc.,*
    No. 2:18-cv-02626-TLN-EFB, 2020 WL 5944445 (E.D. Cal. Oct. 7, 2020) ...............10, 11

*Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n,*
    55 Cal. 4th 1169 (2013)..................................................................................................9

Hahn Loeser & Parks LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

MOTION TO COMPEL ARBITRATION

*Roman v. Super. Ct.*,
   172 Cal. App. 4th 1462 (2009)....................................................................................8, 16

*Sanchez v. Carmax Auto Superstores Cal., LLC*,
   224 Cal. App. 4th 398 (2014)..............................................................................................12

*Sanchez v. Valencia Holding Co., LLC*,
   61 Cal. 4th 899 (2015).........................................................................................................7

*Serpa v. Cal. Sur. Investigations, Inc.*,
   215 Cal. App. 4th 695 (2013)..............................................................................................12

*Shadoan v. World Sav. & Loan Ass'n*,
   219 Cal. App. 3d 97 (1990)..................................................................................................9

*Simula v. Autoliv*,
   175 F.3d 716 (9th Cir. 1999)...............................................................................................15

*Sonic-Calabasas A Inc. v. Moreno*,
   51 Cal. 4th 659 (2011).........................................................................................................9

*Sparling v. Hoffman Constr. Co.*,
   864 F.2d 635 (9th Cir. 1988)...............................................................................................19

*Taft v. Henley Enters., Inc.*,
   No. SACV 15-1658-JLS, 2016 WL 9448485 (C.D. Cal. Mar. 2, 2016)................................12

*Thinket Ink Info. Res., Inc. v. Sun Microsys., Inc.*,
   368 F.3d 1053 (9th Cir. 2004)..............................................................................................19

*United States v. Sutcliffe*,
   505 F.3d 944 (9th Cir. 2007)................................................................................................5

*Wayne v. Staples, Inc.*,
   135 Cal. App. 4th 466 (2006)...............................................................................................9

*West v. Henderson*,
   227 Cal. App. 3d 1578 (1991)..............................................................................................9

*Woodside Homes of California, Inc. v. Super. Ct.*,
   107 Cal. App. 4th 723 (2003)...........................................................................................7, 8

**Statutes**

9 U.S.C. § 2............................................................................................................................5

9 U.S.C. § 3.....................................................................................................................18, 19

Civil Code § 1670.5(a) .........................................................................................................16

Hahn Loeser & Parks LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

MOTION TO COMPEL ARBITRATION

**Other Authorities**

AAA Consumer Arbitration Rules, R-14(a) ............................................................................ 7

Hahn Loeser & Parks LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

MOTION TO COMPEL ARBITRATION

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on February 2, 2023 at 10:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Jacqueline Scott Corley in Courtroom 8 of the above-captioned Court located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendants BAM Trading Services Inc. and Brian Shroder, will and hereby do respectfully move this Court for entry of an Order, pursuant to 9 U.S.C. § 3, to compel arbitration of the claims asserted against them and to dismiss (or, alternatively, stay) all proceedings on the grounds that the issues in this action are referrable to arbitration under the parties' agreements.

Plaintiff agreed to BAM's Terms of Use which apply to the claims arising out of Plaintiff's use of BAM's website to purchase crypto-assets. As a result, Plaintiff's claims, and any challenges that he may wish to raise as to the validity or enforceability of the arbitration clause, must be submitted to arbitration in accordance with the terms of the parties' agreement. The individual defendant Shroder may also invoke the arbitration clause based on the doctrines of agency or equitable estoppel. Since all matters should be arbitrated, BAM respectfully requests that this Court dismiss or, alternatively, stay this matter with the preference being for dismissal.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, Defendants' concurrently filed Request for Judicial Notice and the Declaration of Caitlin Elliott, all pleadings and papers on file in this case, the arguments of counsel, and on such other further matters as the Court may consider.

Dated: November 17, 2022                    HAHN LOESER & PARKS LLP


                                            By:     /s/ Michael J. Gleason
                                                    Michael J. Gleason
                                                    Lindsay J. Mertens
                                                    Attorney for Defendants BAM Trading Services
                                                    Inc. and Brian Shroder

Hahn Loeser & Parks LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA  92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

Hahn Loeser & Parks LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA  92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant BAM Trading Services Inc. ("BAM") provides a spot market for customers to buy and sell digital assets - colloquially known as "cryptocurrency." Plaintiff Michiel Nuveen[1] created an account with BAM. In doing so, he agreed to BAM's Terms of Use ("Terms"), which included an agreement to arbitrate any dispute or controversy arising out of or relating to the Terms. The Terms prominently and repeatedly highlight the arbitration agreement. Despite his agreement, Plaintiff filed this lawsuit seeking to hold BAM liable for a loss in the value of digital assets he purchased from a third party using BAM's platform. BAM is not responsible for the loss of value in Plaintiff's digital assets. But before even reaching that issue, BAM and its CEO, Defendant Brian Shroder, respectfully request that this Court require Plaintiff to abide by his arbitration agreement by compelling arbitration and dismissing (or, alternatively, staying) this case.

**First,** the parties agreed to delegate issues of arbitrability to the arbitrator. Therefore, any challenges to the scope or enforceability of the arbitration clause that Plaintiff may raise should be addressed by the arbitrator rather than this Court.

**Second,** even if the delegation clause is deemed unenforceable (it should not be), the Court should enforce the arbitration agreement because it is both enforceable and applicable to this dispute.

**Third,** even if certain provisions in the Terms are deemed unconscionable, this Court should sever those provisions and enforce the delegation and/or arbitration clauses.

**Fourth,** Plaintiff must also arbitrate his claims against Shroder. All claims against Shroder are premised on "control person liability"—seeking to hold him personally liable for the alleged conduct of BAM based on his position as BAM's CEO. As such, while not a party to the Terms, Shroder may also compel arbitration based on the doctrines of either agency or equitable estoppel.

**Finally,** given that all claims should have been submitted to arbitration rather than litigation, this Court should dismiss this action. Alternatively, this Court should stay the litigation pending the outcome of the arbitration.

---

[1] Jeffrey Lockhart filed this action but Michiel Nuveen was subsequently appointed lead plaintiff.

Hahn Loeser & Parks LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

## II.   STATEMENT OF ISSUE

Whether Plaintiff's acceptance of the Terms of Use and consequent agreement to arbitrate claims against BAM means this Court should compel arbitration of Plaintiff's claims and dismiss this case.

## III.   RELEVANT BACKGROUND

### A.   Plaintiff's Allegations

Plaintiff purchased Terra USD ("UST") using BAM's platform "pursuant to contracts with [BAM]." *First Am. Compl. ("FAC")* ¶¶ 2, 16. UST was listed on BAM's platform "[b]etween April 13, 2022 and June 19, 2022 . . . ." *Id.* ¶ 2. Plaintiff alleges that BAM's "failure to comply with the securities laws" led to the loss of essentially all value of his UST in May 2022. *Id.* ¶ 9. He alleges ten causes of action—seven against BAM for violations of federal and state securities law and three against BAM's chief executive officer Brian Shroder for "control person liability" under those securities laws. *See generally, FAC.* Plaintiff seeks the recovery of "damages, consideration paid for UST, and trading fees, together with interest thereon, as well as attorneys' fees and costs . . . ." *Id.* ¶ 15.

### B.   The Parties Agreement to Arbitrate

Plaintiff contends that he purchased UST at some time between April 13, 2022—when BAM began listing UST—and May 2022. Ex. B to Dec. of M. Nuveen [*Dkt.* 28-3]. During that time period, all users, as a condition of using the BAM platform, expressly agreed to BAM's applicable "Terms of Use" that became effective on January 4, 2022. *Dec. of Caitlin Elliott* at ¶ 3.[2] Those terms inform prospective users that the Terms "govern your access and use of Binance.US and the Services provided by BAM Trading Services Inc[.]" (Ex. A to Elliott Dec., Terms at pg. 1.) Prospective users are advised to "read these Terms" and identify them as "important because they . . . [o]utline your legal rights . . . and [c]ontain . . . an agreement to resolve any disputes that may arise by arbitration." (*Id.*) The point about "arbitration" is set forth in a bullet point, separate from other text, on the first page of the Terms. (*Id.*)

> Please read these Terms, our Disclosures, Privacy Policy, Trading Rules and any other terms referenced in this document carefully. The Terms you see below are important because they:
> - Outline your legal rights;
> - Explain the rights you give to use when you use our Services;

---

[2] Plaintiff alleges that BAM changed its "Terms of Use" related to the complaint process on June 1, 2022. *FAC* ¶ 163. The June 1, 2022 amendments should not be at issue, however, because they are not retroactive and not the terms that Plaintiff agreed to if he purchased UST.

- • Describe the rules you must following when using our Services; and
- • Contain a class action waiver and an agreement to resolve any disputes that may arise by arbitration.

Directly following the bullet points, the Terms require an acknowledgement that potential users "agree that you have read, understand, and accept these Terms" and if "you do not agree with these Terms, do not use" BAM's services. (*Id.*)

The first page of the Terms includes a "Table of Contents" with hyperlinks to the various Terms—including a term entitled "Arbitration." (Ex. A to Elliott Dec., Terms at pg. 2.) Following the "Table of Contents," a term entitled "**Binding Contract**" provides that the "Terms form a binding contract between you and BAM. Please read these Terms carefully. You agree that you have read, understand, and accept these Terms by signing up for an Account(s) with BAM . . . ." (*Id.*)

Under the heading "**Complaints,**" prospective BAM customers have the option—but not the requirement—to first submit any complaint to BAM and allow BAM thirty business days to attempt to resolve the complaint. (*Id.* Terms at pg. 12.)

If the complaint process is not used or is unsuccessful, the parties agree "that ***any dispute or controversy arising out of or relating to these Terms*** shall be settled through binding arbitration on an individual basis." (Ex. A to Elliott Dec., Terms at pg. 14 [emphasis added].) The parties further agreed that "[a]rbitration shall be conducted in accordance with the rules of the American Arbitration Association ('AAA')." (*Id.*) The agreement explicitly pointed users to those AAA rules: "The AAA rules, as well as instructions on how to file an arbitration proceeding with the AAA, appear at adr.org, or you may call the AAA at 1-800-778-7879." (*Id.*)

Prior to initiating arbitration, any "***party*** who intends to seek arbitration must first send a written notice of the dispute to the other, by certified mail, Federal Express, UPS, or Express Mail (signature required) (**'Notice'**)." (*Id.* [emphasis added].) The provision provides BAM's address for any notices. (*Id.*) BAM agreed "to use good faith efforts to resolve the claim directly, but if we do not reach an agreement to do so within 30 days after the Notice is received, ***you or BAM*** may commence an arbitration proceeding." (*Id.* [emphasis added].)

/ / /

/ / /

Hahn Loeser & Parks LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

Hahn Loeser & Parks LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

# IV.   LAW AND ARGUMENT

## A.   The Federal Arbitration Act Governs the Arbitration Clause

The Terms' arbitration clause is governed by the Federal Arbitration Act ("FAA"), which applies to "any written provision in a 'contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract.'" *Portland Gen. Elec. Co. v. U.S. Bank Trust Nat'l Ass'n*, 218 F.3d 1085, 1089 (9th Cir. 2000) (quoting 9 U.S.C. § 2). The term "involving commerce" is the "functional equivalent of the more familiar term 'affecting commerce,'" which represents the "broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (per curiam) (citation omitted).

Here, the alleged transactions involved interstate commerce, with Plaintiff stating that he resides in North Dakota and contracted to do business with BAM, a Delaware corporation "headquartered" in California. *FAC* ¶¶ 16, 17. Also, Plaintiff specifically alleges that his transaction arose out of BAM's "use of means and instrumentalities of interstate commerce for the purpose of using facilities of an exchange" and by the "utilization of the Internet within, and multiple servers throughout, the United States." *Id.* ¶ 221; *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) ("[T]he internet is an instrumentality and channel of interstate commerce.") Accordingly, the FAA governs.

The FAA embodies a "national policy favoring arbitration and a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345-46 (2011) (internal quotations and citations omitted); *Davis v. Nordstrom. Inc.*, 755 F.3d 1089, 1092 (9th Cir. 2014) (same). The FAA provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or inequity for the revocation of any contract." 9 U.S.C. § 2.

## B.   Threshold Issues of Arbitrability Have Been Delegated to the Arbitrator

A threshold issue in an arbitration motion is who determines the "gateway" issue of arbitrability—the court or an arbitrator. "These include 'gateway' questions of arbitrability, such as 'whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and

whether an arbitration clause in a concededly binding contract applies to a given controversy.'" *Esguerra-Aguilar, Inc. v. Shapes Franchising, LLC*, No. 20-cv-00574-BLF, 2020 WL 3869186, at *2 (N.D. Cal. July 9, 2020) quoting *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011) (citations omitted).

While generally reserved for the court, the parties may agree to allow the arbitrator determine these gateway issues. *Id.*; *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) ("parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.") Where the parties to an arbitration agreement "clearly and unmistakably" agree that an arbitrator will decide gateway issues, the arbitrator, rather than the Court, will decide those issues. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract" and "possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). This remains "true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Ibid.*

### 1.   The Parties Delegated Issues of Arbitrability to the Arbitrator

Here, any "gateway" challenges by Plaintiff to the validity or enforceability of the arbitration clause must be submitted to and determined by the arbitrator because the arbitration clause incorporates the AAA rules which delegate the question of arbitrability to the arbitrator.

"In the Ninth Circuit, it is well-settled that incorporation of arbitration rules (such as AAA … rules), 'constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability.'" *Esguerra-Aguilar, Inc.*, 2020 WL 3869186, at *4 quoting *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); see also *Interdigital Tech. Corp. v. Pegatron Corp.*, No. 15-CV-02584-LHK, 2016 WL 234433, at *5 (N.D. Cal. Jan. 20, 2016) (same); *Cooper v. Adobe Sys. Inc.*, No. 18-CV-06742-BLF, 2019 WL 5102609, at *6 (N.D. Cal. Oct. 11, 2019).

The Terms provide: "Arbitration shall be conducted in accordance with the rules of the American Arbitration Association. . . . The AAA rules, as well as instructions on how to file an arbitration proceeding with the AAA appear at adr.org or you may call the AAA at 1-800-778-7879." (Ex. A to Elliott Dec., Terms at pg. 14.) In turn, the AAA rules provide:

The arbitrator shall have the power to rule on his or her own jurisdiction, including

Hahn Loeser & Parks LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

(AAA Consumer Arbitration Rules, R-14(a), Ex. 1 to RJN.) Therefore, the parties clearly and unmistakably delegated all issues related to arbitrability exclusively to the arbitrator, not the Court. *See Esguerra-Aguilar, Inc.*, 2020 WL 3869186, at *4-5 (finding identical clause in AAA commercial rules meant that the parties clearly delegated issues of arbitrability to the arbitrator).

### 2.   Plaintiff Cannot Prove That the Delegation Clause Is Unconscionable

Plaintiff argues in his FAC that the delegation clause should not be enforced because it is unconscionable. *FAC* ¶¶ 158-188. In California,[3] "unconscionability has both a 'procedural' and 'substantive' element, the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results." *Armendariz v. Found. Health PsychCare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (quoting *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486-487 (1982).) "[P]rocedural and substantive unconscionability must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Id.* (emphasis in original); *accord Woodside Homes of California, Inc. v. Super. Ct.,* 107 Cal. App. 4th 723, 727 (2003). However, procedural and substantive unconscionability "need not be present in the same degree." *Sanchez v. Valencia Holding Co., LLC,* 61 Cal. 4th 899, 910 (2015). There is instead a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

"Recently, the California Supreme Court has emphasized that 'unconscionability requires a substantial degree of unfairness *beyond 'a simple old-fashioned bad bargain*.'" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (quoting *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245 (2016) (emphasis in *Mohamed*). "Rather, unconscionable contracts are those that are 'so one-sided as to 'shock the conscience.'" *Mohamed*, 848 F.3d at 1210 (quoting *Baltazar*, 62 Cal.4th at 1244.)

"When considering an unconscionability challenge to a delegation provision, the court must consider only arguments 'specific to the delegation provision.'" *Mohamed*, 848 F.3d at 1210 (quoting *Rent-A-Ctr.*, 561 U.S. at 73.)

---

[3] The Terms provide that California contract law applies. (Ex A to Elliott Dec., Terms at pg. 14.)

Hahn Loeser & Parks LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

As the party claiming unconscionability, Plaintiff has the burden of proving *both* procedural and substantive unconscionability. *Crippen v. Central Valley RV Outlet, Inc.*, 124 Cal. App. 4th 1159, 1165 (2004); *Woodside Homes*, 107 Cal. App. 4th at 728. He has not done so.

(a)     *The Delegation Clause Is Not Procedurally Unconscionable*

The procedural element of unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012). Here, in his FAC, Plaintiff argues that the delegation clause is procedurally unconscionable for two reasons: (1) the delegation is found by reference to the "AAA rules" rather than "express warning" in the Terms that "gateway disputes about arbitrability" are delegated; and (2) the delegation clause is part of a contract of "adhesion." *FAC* ¶ 164. Neither argument proves procedural unconscionability.

**First,** the Ninth Circuit holds "that incorporation of the AAA rules constitutes clear and unmistakable evidence that contract parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

**Second,** labeling the Terms as "adhesive" does not render the delegation clause procedurally unconscionable. The flawed argument attacks the arbitration clause (and the entire contract) as a whole rather than properly focusing on the delegation clause itself.

Moreover, even if properly focused on the delegation clause, "[t]he adhesive nature of the contract will not always make it procedurally unconscionable." *Roman v. Super. Ct.*, 172 Cal. App. 4th 1462, 1470 n. 2 (2009). To "reflexively conclude the finding of an adhesion contract alone satisfies the procedural prong" is incorrect. *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1318 (2005). Thus, "[t]o describe a contract as adhesive in character is not to indicate its legal effect. It is, rather, the beginning and not the end of the analysis insofar as enforceability of its terms is concerned." *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 819 (Cal. 1981); *see also Izzi v. Mesquite Country Club*, 186 Cal. App. 3d 1309, 1318 (1986) ("Even assuming arguendo the purchase agreement was adhesive in nature, we would still view it as enforceable.").

Courts recognize that even with "take it or leave it" consumer contracts, the availability of market alternatives defeats any argument of procedural unconscionability. "The availability of alternative sources

Hahn Loeser & Parks LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

Hahn Loeser & Parks LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

from which to obtain the desired service defeats any claim of oppression, because the consumer has a meaningful choice." *Belton v. Comcast Cable Holdings LLC*, 151 Cal. App. 4th 1224, 1245 (2007); *accord Morris*, 128 Cal. App. 4th at 1320 ("procedural element of unconscionability may be defeated[] if the complaining party has a meaningful choice of reasonably available alternative sources of supply from which to obtain the desired goods and services free of the terms claimed to be unconscionable."); *Shadoan v. World Sav. & Loan Ass'n*, 219 Cal. App. 3d 97, 103 (1990) (terms of a loan agreement were not unconscionable where plaintiffs failed to show facts indicating they were unable to receive more favorable terms from another lender); *Wayne v. Staples, Inc.,* 135 Cal. App. 4th 466, 482 (2006) ("There can be no oppression establishing procedural unconscionability, even assuming unequal bargaining power and an adhesion contract, when the customer has meaningful choices"); *Dean Witter Reynolds, Inc. v. Super Ct.,* 211 Cal. App. 3d 758, 768 (1989) (same).

Here, the Terms were a condition of using BAM's platform. *FAC* ¶¶ 1, 153. This was not a contract for "life's necessities." *West v. Henderson*, 227 Cal. App. 3d 1578, 1587 (1991) (no oppression for tenant entering lease: "The only oppression on [tenant] we perceive in the circumstances signing of the lease was self-imposed. [Tenant] was not in pursuit of life's necessities; this was a business venture.") (overruled on other grounds by *Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169 (2013).) Nor were the Terms a condition of employment. *Sonic-Calabasas A Inc. v. Moreno*, 51 Cal. 4th 659, 685-686 (2011) ("we have recognized that contract terms imposed as a condition of employment are particularly prone to procedural unconscionability.") Instead, Plaintiff *opted* to use a "crypto-asset" platform for investing. He did not have to use it at all—or he could have used other available platforms or methods to invest in digital assets, such as another centralized platform like Coinbase, or a decentralized method allowing Plaintiff to interact directly with the blockchain. *FAC* ¶¶ 40-42 (recognizing existence of other platforms).

In addition, absent surprise or oppression, adhesive contracts will be enforced unless Plaintiff makes a strong showing of substantive unconscionability. *Chand v. Checksmart Fin. LLC*, No. 17-CV-03895-JSC, 2017 WL 3605221, at *3 (N.D. Cal. Aug. 22, 2017) (Scott Corley, J.: compelling arbitration); *Droesch v. Wells Fargo Bank, N.A.*, No. 20-cv-06751-JSC, 2021 WL 1817057, at *4 (N.D. Cal. May 6, 2021) (Scott Corley, J.: compelling arbitration).  Here, there is no surprise or oppression. Plaintiff was repeatedly

informed of the arbitration provision with emphasized language throughout the Terms. (*See* above § III(B).) In sum, Plaintiff cannot prove procedural unconscionability. Without procedural unconscionability, this Court need not even consider substantive unconscionability and should enforce the delegation clause. *Mohamed*, 848 F.3d at 1211 (Ninth Circuit holding: "Because the [delegation provisions] were not procedurally unconscionable, and because both procedural and substantive unconscionability must be present in order for an agreement to be unenforceable, [citation omitted], we need not reach the question whether the agreements here were substantively unconscionable.")

### (b)   *The Delegation Clause Is Not Substantively Unconscionable*

While the lack of procedural unconscionability moots the issue, Plaintiff's arguments regarding the substantive unconscionability of the delegation clause also fail. In his FAC, Plaintiff argues the delegation clause is substantively unconscionable because the Terms require him to "jump through several antecedent hoops before initiating arbitration" and the delegation clause lacks "mutuality." *FAC* ¶¶ 161, 165-172. His argument fails for two separate reasons—it does not address the delegation clause and it does not prove substantive unconscionability.

### (1)   **Plaintiff's Arguments Do Not Address the Delegation Provision**

Plaintiff's arguments challenge the arbitration clause as a whole rather than the delegation clause. This is improper because courts determining the enforceability of a delegation clause may only consider those arguments that "go to the validity of the delegation provision" itself, not challenges to other parts of the arbitration agreement as a whole. *Rent-A-Ctr. W., Inc.*, 561 U.S. at 72-73 ("[U]nless [the plaintiff] challenged the delegation provision specifically, we must treat it as valid . . . , leaving any challenge to the validity of the Agreement as a whole for the arbitrator."); *see also Mohamed*, 848 F.3d at 1210 ("When considering an unconscionability challenge to a delegation provision, the court must consider only arguments 'specific to the delegation provision.'"); *Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C.*, No. 18-cv-00303-WHO, No. 18-cv-00304-WHO, 2019 WL 144585, at *8 (N.D. Cal. Jan. 9, 2019) (holding that unconscionability arguments about "the Agreement itself, not the delegation provision," must "be resolved by the arbitrator"); *Riley v. Medline Indus., Inc.*, No. 2:18-cv-02626-TLN-EFB, 2020 WL 5944445, at *4 (E.D. Cal. Oct. 7, 2020) ("[P]laintiff's unconscionability arguments must be decided by

Hahn Loeser & Parks LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

MOTION TO COMPEL ARBITRATION

the arbitrator").

For example, in *Mohamed*, the Ninth Circuit reversed a district court's denial of a motion to compel arbitration and held that the district court "erred . . . and improperly assumed the authority [of the arbitrator] to decide whether the arbitration agreements were enforceable." *Mohamed*, 848 F.3d at 1206, 1212. The district court held that the arbitration clause was substantively unconscionable because it included a waiver of the plaintiff's claims under the California PAGA statute. *Id.* at 1212. The Ninth Circuit held that a valid delegation clause existed and "the district court should not have reached the question of whether the arbitration agreements were enforceable in the first place" because "challenges to the enforceability and severability of the PAGA waiver in the [arbitration agreement] fall to the arbitrator to decide." *Id.*

Facing the exact same challenges that Plaintiff makes in this case, another court in this district granted a motion to compel arbitration and determined that issues of arbitrability had been delegated to the arbitrator. *Riley*, 2020 WL 5944445, at *1. The *Riley* plaintiff alleged that the arbitration clause was unconscionable because it was a "take-it-or-leave-it" contract and lacked mutuality. *Id.* at *4. The district court declined to consider those unconscionability arguments that did not "single out the delegation provision" and instead "challenge[d] the agreement as a whole, with special emphasis on several provisions *other than* the delegation provision." *Id.* (emphasis in original). Those "merits of Plaintiff's unconscionability arguments must be decided by the arbitrator." *Id.*

Here, Plaintiff's arguments are not specific to the delegation clause. That delegation clause provides: "Arbitration shall be conducted in accordance with the rules of the American Arbitration Association." (Ex. A to Elliott Dec., Terms at pg. 14.) No lack of mutuality exists—both parties agree to be bound by those AAA rules, which delegate the gateway issues of arbitrability to the arbitrator. Rather, similar to *Riley* and as illustrated in Plaintiff's FAC, Plaintiff focuses on "provisions *other than* the delegation provision." *Riley*, 2020 WL 594445, at *4. Specifically, Plaintiff takes issue with the "submitting a complaint" provision occurring prior to the arbitration which he contends is arduous and one-sided. *FAC* ¶¶ 166-171. He argues that Plaintiff must follow a multi-step complaint process before commencing arbitration while BAM "need only complete the Notice Procedure (with its shorter time horizon) before it commences an arbitration." *Id.* ¶ 171. Those arguments attack the unconscionability of the arbitration

Hahn Loeser & Parks LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA  92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

MOTION TO COMPEL ARBITRATION

agreement rather than the delegation clause and must be addressed by the arbitrator.

**(2)**      **Alternatively, Plaintiff Has Not Proven That the Delegation Provision Is Substantively Unconscionable**

Even if Plaintiff's argument addressed the delegation clause (it does not), Plaintiff cannot prove substantive unconscionability.

**First,** the pre-arbitration "complaint procedure" is not substantively unconscionable. What Plaintiff describes as an "odyssey" consists of the option of submitting a complaint to BAM's customer service to see if the parties may informally resolve a consumer dispute. Also, *either* party instituting arbitration must provide notice of their intent prior to doing so. Courts look at the business purpose of a clause when evaluating unconscionability. *Chen v. PayPal, Inc.*, 61 Cal. App. 5th 559, 579 (2021) (unconscionability "requires inquiry into the 'commercial setting, purpose, and effect' of the contract or contract provision. [citation omitted.]"); *George v. eBay, Inc.*, 71 Cal. App. 5th 620, 634 (2021) (no substantive unconscionability "given the legitimate business purposes served by the eBay policies at issue.")

A legitimate business purpose exists for a complaint procedure. California courts hold that "a requirement that internal grievance procedures be exhausted before proceeding to arbitration is both reasonable and laudable" and "plainly does not 'shock the conscience' so as to vitiate the arbitration agreement." *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 710 (2013); *see also Barati v. Ottno, Inc.*, No. G054960, 2018 WL 3099015, at *4 (Cal. 4th Dist., Div. 3 June 25, 2018) (characterizing requirement that the parties first mediate as easily complied with and directing plaintiff to attend "an informal meeting, mediation . . . , and finally arbitration if the case is not settled by then"); *Taft v. Henley Enters., Inc.,* No. SACV 15-1658-JLS (JCGx), 2016 WL 9448485, at *2 (C.D. Cal. Mar. 2, 2016) (enforcing arbitration agreement where employees were first required to provide written notice describing the nature of all claims and detailing supporting facts); *Sanchez v. Carmax Auto Superstores Cal., LLC*, 224 Cal. App. 4th 398, 406 (2014) (enforcing agreement requiring employees to submit a form listing claims and witnesses). Similarly, here, a legitimate business reason exists for early and inexpensive resolution of

Hahn Loeser & Parks LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA  92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

MOTION TO COMPEL ARBITRATION

Hahn Loeser & Parks LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA  92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

1  consumer complaints prior to arbitration.[4]

2  **Second,** the Terms are not so one-sided as to "shock the conscience." There are no unilateral

3  provisions in the Terms. While Plaintiff may argue that the "complaint procedure" unilaterally applies to

4  customers, the "complaint procedure" in the Terms is an option for consumers to use rather than a

5  requirement before arbitration. This optional "complaint procedure" provides BAM's customer service

6  department an opportunity to address customer complaints efficiently and without formal arbitration.

7  Otherwise—as even Plaintiff admits in his FAC—*both* BAM and its customers must abide by the "notice"

8  provision prior to instituting arbitration. *FAC* ¶ 171 ["Meanwhile, [BAM] need only complete the Notice

9  Procedure . . . before it commences an arbitration."]; Ex. A to Elliott Dec., Terms at pg. 14 ["A party

10  who intends to seek arbitration must first send a written notice of the dispute to the other, by certified

11  mail, Federal Express, UPS, or Express Mail (signature required) ("Notice").].) This limited unilateral

12  provision has a purpose—consumer issues often can be resolved long before such issues ever go to a

13  legal process, and by allowing  a consumer to air her grievances, it may avoid either party incurring the

14  time and cost of legal proceedings.  And, regardless, certain one-sided features of a contract do not render

15  the contract unconscionable. *Pinnacle Museum Tower Assn.*, 55 Cal.4th at 246 ("A contract term is not

16  substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be so

17  one-sided as to shock the conscience. [quotations].'; *Chen*, 61 Cal. App. 5th at 579 ("Not all one-sided

18  contract provisions are unconscionable; hence the various intensifiers in our formulation: '*overly* harsh,'

19  '*unduly* oppressive,' '*unreasonably* favorable' . . . An evaluation of unconscionability is highly dependent on

20  context." (emphasis in original).)

21  Also, the Terms provide that *any* disputes or controversies must be arbitrated for *both* parties.

22  (Ex. A to Elliott Dec., Terms at pg. 14 [" . . . *any* dispute or controversy arising out of or relating to these

24  [4] The FAC alleges that it was "impossible" for Plaintiff Nuveen to begin the complaint process "[a]t the time of
25  the filing of this action" because "resolution@binance.us was not a working email address . . . ." *FAC* ¶ 173. This
argument does not support unconscionability for several reasons. First, that e-mail address appears in the May 30,
26  2022 Terms which went into effect *after* Plaintiff's purchase. The applicable January Terms provide other
instructions on submitting a notice. (Ex. A to Elliott Dec., Terms at pg. 14.) Second, "at the time of the filing"
27  the October 19, 2022 FAC when Nuveen first appeared, a different set of Terms applied that also did not use that
e-mail address. Finally, even if a technical error existed in submitting a complaint for a limited period of time, that
28  has no impact on the agreement to arbitrate. Per the terms, Binance.US had 30 days to respond and failure to
resolve the complaint means the Plaintiff could then pursue arbitration.

MOTION TO COMPEL ARBITRATION

Terms shall be settled through binding arbitration . . . ."] [emphasis added].) The Terms did not limit arbitrable claims to those subject to the complaint process—it provided that *any* dispute or controversy must be arbitrated. In rejecting a similar substantive unconscionability challenge to an arbitration clause, this Court found that mutuality existed based on an agreement to arbitrate "all disputes" arising out of the employment agreement. *Chin v. Boehringer Ingelham Pharmaceuticals, Inc.*, No. 17-cv-03703-JSC, 2017 WL 3977381, at *5 (N.D. Cal. Sept. 11, 2017) (Scott Corley, J.).

**Finally,** in support of his unconscionability argument, Plaintiff's FAC cites *Bielski v. Coinbase, Inc.*, No. C21-07478 WHA, 2022 WL 1062049 (N.D. Cal. April 8, 2022). But that non-binding decision has been appealed and should be overturned because the *Bielski* court improperly went beyond the delegation clause in analyzing the unconscionability of the arbitration clause as a whole. *Bielski v. Coinbase, Inc.*, 9th Cir. No. 22-15566. And, even if upheld, *Bielski* is factually distinguishable. There, the district court deemed the delegation clause unconscionable based on terms that are not present in BAM's delegation clause. The *Bielski* delegation clause delegated to the arbitrator disputes regarding "the enforceability, scope, or validity of the Arbitration Agreement." *Id.* at *2. The district court held this clause did not "*generally* delegate the arbitrability of *all* disputes between Coinbase and its users to the arbitrator" but rather it "*specifically* delegates arbitrability of the 'Arbitration Agreement,' an expressly defined term in the user agreement." *Id.* at *3 (emphasis in original). According to the district court, inclusion of the defined term "Arbitration Agreement" allowed it to go beyond the delegation clause and "backtrack[] through" the entire arbitration agreement to evaluate mutuality. *Id.* It then determined that the "Arbitration Agreement" only required arbitration of consumer disputes so inclusion of the defined term "Arbitration Agreement" in the delegation clause also renders the delegation clause one-sided and unconscionable.

Here, in contrast, BAM's relevant delegation clause does not include a defined term which allows the court to "backtrack" and adjudicate the enforceability of the entire arbitration agreement. BAM's delegation clause provides: "Arbitration shall be conducted in accordance with the rules of the American Arbitration Association ("AAA"). (Ex. A to Elliott Dec., Terms at pg. 14.) Mutuality exists—both sides agreed to have the AAA rules govern which contain a delegation clause. Plaintiff can still raise overall unconscionability arguments regarding the overall arbitration agreement—but he must do so before the arbitrator.

Hahn Loeser & Parks LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

For all of the reasons stated above, this Court should compel arbitration and refrain from adjudicating the overall enforceability of the arbitration agreement as those issues have been delegated to the arbitrator to determine.

**C.** **Even if The Court, Rather Than an Arbitrator, Decides Issues of Arbitrability, Plaintiff Cannot Show a Basis for Disregarding the Arbitration Agreement**

This Court need not and should not address Plaintiff's challenges to the enforceability of the arbitration clause given that those issues have been delegated to the arbitrator, as shown above. But even if this Court concludes that it, rather than the arbitrator, should address the threshold issues, it should still enforce the parties' agreement to arbitrate.

Absent delegation, a court engages in a "limited two-part inquiry" to decide the gateway issues of arbitrability: "first, it determines whether the arbitration agreement is valid, and second, it determines whether the agreement encompasses the claims at issue." *Esguerra-Aguilar, Inc.*, 2020 WL 3869186, at *3, citing *Mitsubishi Motors Co. v. Soler Chrysler Plymouth*, 473 U.S. 614, 627-28 (1985). "When determining whether the arbitration clause encompasses the claims at issue, 'all doubts are to be resolved in favor of arbitrability.'" *Ibid.* quoting *Simula v. Autoliv*, 175 F.3d 716, 721 (9th Cir. 1999) (interpreting language "arising in connection with" an arbitration clause to "reach[] every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract.")

**First,** the arbitration agreement encompasses Plaintiff's claims. The Terms govern Plaintiff's use of BAM's platform, including the purchase and sale of crypto-assets on BAM's platform. (Ex. A to Elliott Dec., Terms at pg. 1.) Plaintiff used BAM's platform to purchase UST and now sues BAM because the UST lost value, as investments sometimes do. *FAC* ¶¶ 2, 9. There can be no dispute that the arbitration agreement encompasses his claim.

**Second,** the arbitration agreement is valid. As shown above, Plaintiff agreed to the Terms when he set up his BAM account.

BAM anticipates that Plaintiff will challenge the arbitration agreement as unconscionable for the same reasons he challenges the delegation clause. Some overlap in analysis exists given that Plaintiff improperly goes beyond the delegation clause, as shown above. But even if the delegation clause was deemed unconscionable (it should not be), differences exist which warrant a different outcome for the

Hahn Loeser & Parks LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

arbitration agreement as a whole.

Specifically, Plaintiff's procedural unconscionability arguments regarding the delegation clause do not apply to the arbitration clause as a whole. Plaintiff argues that the delegation clause was procedurally unconscionable because it incorporates the AAA rules rather than using an "express warning" of delegation. *FAC* ¶ 164. If Plaintiff contends he was "surprised" by the delegation clause—he cannot say the same for the arbitration clause. As shown above, the Terms informed Plaintiff multiple times of the arbitration agreement. Thus, procedural unconscionability does not exist when enforcing the arbitration agreement and this Court need not consider substantive unconscionability. (Supra § IV(B)(2)(a).)

## D. **If Necessary, This Court Should Sever the Substantively Unconscionable Terms and Enforce the Delegation or Arbitration Clause**

Civil Code section 1670.5, subdivision (a) states that "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause … as to avoid any unconscionable result." The California Supreme Court interprets this provision to mean that if a trial court concludes that an arbitration agreement contains unconscionable terms, it then "must determine whether these terms should be severed, or whether instead the arbitration agreement as a whole should be invalidated." *Gentry v. Super. Ct.*, 42 Cal. 4th 443, 472-473 (2007), abrogated on other grounds as recognized in *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348, 360 (2014). "[T]he strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement: Although 'the statute appears to give a trial court some discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement[,] . . . it also appears to contemplate the latter course only when an agreement is "permeated" by unconscionability.'" *Roman v. Super. Ct.*, 172 Cal. App.4th at 1477-1478 quoting *Armendariz*, 24 Cal. 4th at 122; *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 986 (2010).

Here, Plaintiff argues the delegation clause (and, the arbitration clause) lacks mutuality because the pre-arbitration complaint procedure only applies to Plaintiff and not BAM. Otherwise, Plaintiff admits the pre-arbitration notice procedure applies equally to Plaintiff and BAM.

In a nearly identical scenario, this Court severed a pre-arbitration "one-way internal grievance

Hahn Loeser & Parks LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

procedure" and enforced the arbitration clause. *Castaldi v. Signature Retail Services, Inc.*, No. 15-cv-00737-JSC, 2016 WL 74640, at *14 (N.D. Cal. Jan. 7, 2016) (Scott Corley, J.) (applying Illinois contract law). It determined that "Paragraph 5 [containing the internal grievance procedure] can be eliminated in its entirety without impacting the central purpose of the Agreement—mutual arbitration—or requiring any rewriting of the enforceable terms." *Id.* The Ninth Circuit has done the same, applying California law. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1273 (9th Cir. 2017) (enforcing arbitration provision after severing portion of provision that allowed the employer, but not the employee, to seek judicial resolution of certain claims.)

Therefore, the court should sever any provision deemed substantively unconscionable and enforce the agreement to arbitrate.

**E.    Shroder Rightfully Invokes The Arbitration Clause**

While not a party to the Terms, Shroder rightfully invokes the arbitration clause under either the doctrine of agency or equitable estoppel.

**1.    Shroder May Enforce the Arbitration Clause Based On Agency**

"[N]on signatories of arbitration agreements may be bound by the agreement under the ordinary contract and agency principles." *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986) (citations omitted).

[A]gents of a signatory can compel the other signatory to arbitrate so long as (1) the wrongful acts of the agents for which they are sued relate to their behavior as agents or in their capacities as agents [*Letizia*, 802 F.2d at 1188] and (2) the claims against the agents arise out of or relate to the contract containing the arbitration clause [*Britton v. Co-op Banking Grp.*, 4 F.3d 742, 748 (9th Cir. 1993)] (consistent with the language of the arbitration clause).

*Amisil Holdings Ltd v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 832 (N.D. Cal. 2007).

As an example, officers of a franchisor successfully compelled arbitration against a franchisee based on an arbitration clause in a franchise agreement. *Esguerra-Aguilar, Inc.*, 2020 WL 3869186, at *6. The alleged acts of the individual defendants "were within their agency responsibilities" as officers and "relate to the sale of the franchises governed by the Franchise Agreement at issue in this case, containing the arbitration clause." *Ibid.*

Hahn Loeser & Parks LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

Here, all claims against Shroder allege that he is the "control person" and "CEO" of BAM. *FAC* ¶ 18. All claims allege control person liability against Shroder as CEO of BAM based on his "power and authority to direct the management" of BAM. *Id.* ¶¶ 214-215, 268-269, 293-294. All claims also seek to hold Shroder "jointly and severally" liable with BAM arising out of Plaintiff's purchase and sale of UST using the BAM website—the terms of which are governed by the Terms with the arbitration clause. *Id.* ¶¶ 213, 218, 267, 270, 293, 296. Therefore, Shroder may invoke the arbitration clause because his alleged acts occurred within his agency responsibility as CEO of BAM and relate to the purchase of UST on BAM's website which are governed by the Terms.

**2.      Shroder May Enforce the Arbitration Clause Based on Equitable Estoppel**

A non-signatory may enforce an arbitration clause based on equitable estoppel in two scenarios:

> (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract . . . , and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.

*Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128-29 (9th Cir. 2013) (citations and alterations omitted).

For example, in *Esguerra-Aguilar*, the district court granted the individual defendants' motion to compel arbitration because the complaint "clearly alleged interdependent conduct" with the franchisor and its officers. *Esguerra-Aguilar,* 2020 WL 3869186, at *7. The plaintiff alleges these officers directed and supervised the company in its allegedly fraudulent activity under the franchise agreements. *Id.*

Here, Plaintiff alleges "interdependent and concerted" misconduct by Shroder (the non-signatory) and BAM (the signatory). All claims are premised on Shroder directing the activity of BAM in his capacity as CEO and seeking to hold him "jointly and severally" liable for the conduct of BAM based on "control person liability." Therefore, in addition to the agency theory, the equitable estoppel doctrine also allows Shroder to invoke the arbitration clause of the Terms.

**F.      This Matter Should Be Dismissed, or Alternatively Stayed, Pending Arbitration**

The FAA authorizes a court to grant a stay pending resolution of arbitration. 9 U.S.C. § 3 ("[T]he court . . . upon being satisfied that the issue involved . . . is referable to arbitration . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had.") However, nothing

Hahn Loeser & Parks LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

in the FAA limits the court's authority to dismiss a case, especially when "all claims are barred by an arbitration clause." *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988). Thus, the Ninth Circuit has held that courts have discretion under 9 U.S.C. § 3 to either stay or dismiss claims that are subject to an arbitration agreement. *See id.*; *see also Thinket Ink Info. Res., Inc. v. Sun Microsys., Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004) (holding that the district court properly exercised its discretion in dismissing an action where all claims were subject to arbitration). Courts in this district, including this court, "regularly dismiss actions after granting motions to compel arbitration where all of the plaintiff's claims were subject to arbitration." *Campos v. JP Morgan Chase Bank, NA*, No. 18-cv-06169-JSC, 2019 WL 827634, at *7-8 (N.D. Cal. Feb. 21, 2019) (Scott Corley, J.) (compelling arbitration and dismissing case), *citing Castaldi v. Signature Retail Servs., Inc.*, No. 15-cv-00737-JSC, 2016 WL 7042991 (N.D. Cal. Jan. 20, 2016); *Chau v. EMC Corp.*, No. C-13-04806-RMW, 2014 WL 842579, at *6 (N.D. Cal. Feb. 28, 2014); *Morris v. Ernst & Young LLP*, No. C-12-04964, 2013 WL 3460052, at *10 (N.D. Cal. July 9, 2013); *DeMartini v. Johns*, No. 3:12-CV-03929-JCS, 2012 WL 4808448, at *6 (N.D. Cal. Oct. 9, 2012); *Lewis v. UBS Fin. Servs. Inc.*, 818 F. Supp. 2d 1161, 1169 (N.D. Cal. 2011).

Similar to *Campos*, here, "[b]ecause all of the claims asserted in this case must be arbitrated, leaving no claims to be resolved following arbitration, the . . . dismissal of this action without prejudice is appropriate." *Campos*, 2019 WL 827634, at *12. Alternatively, the case should be stayed pending the outcome of arbitration.

## V.   <u>CONCLUSION</u>

For the reasons stated above, BAM and Shroder respectfully request that this Court enforce the delegation clause or, if necessary, the arbitration clause and compel arbitration. BAM and Shroder also respectfully request that this Court dismiss or, alternatively, stay this litigation, with the preference being for dismissal since all claims are arbitrable per Plaintiff's agreement with BAM.

Dated: November 17, 2022                HAHN LOESER & PARKS LLP


                                        By:    */s/ Michael J. Gleason*
                                               Michael J. Gleason
                                               Lindsay J. Mertens
                                               Attorney for Defendants BAM Trading Services
                                               Inc. and Brian Shroder

1

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2022, a copy of the foregoing document was electronically

filed using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Michael J. Gleason*
Michael J. Gleason

Hahn Loeser & Parks LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

MOTION TO COMPEL ARBITRATION